We'll proceed with the next case. Ignacio Balaez Serra v. U.S. Attorney General. The American Immigration Council is here as amicus. Mr. Martin High is here for the petitioner Serra. And James Hurley is here for the Attorney General. And Joshua Carpenter is here for the amicus. And when you're ready, Mr. High, you may begin. Good morning, Your Honors. May it please the Court. My name is Josh Carpenter, and I'm here this morning with my colleague Jonathan Morton on behalf of Amici Curia, the American Immigration Council, and the Immigration Justice Campaign in support of Petitioner Ignacio Balaez Serra. I'll be going first in addressing the broader legal arguments raised in our Amici brief before turning things over to my esteemed colleague and counsel for petitioner Martin High, who will address the more case-specific issues in this matter. Your Honors, this morning this Court will determine what standards should apply and what steps an immigration judge should take to verify an actual relevant inconsistency before using that inconsistency to make an adverse credibility determination against an asylum seeker throughout this circuit. The immigration judge and the Board of Immigration Appeals below, as well as the respondent in any discrepancy of any kind, regardless of how minute or how technical, can justify an adverse credibility determination. They also seem to believe that the appellate bodies in the BIA and this Court have very little power to overturn those rulings. Respectfully, though, that is incorrect for two key reasons. First, this Court already has binding precedent that requires an immigration judge to verify an actual relevant inconsistency that goes to the truthfulness of the asylum seeker's claim before making an adverse credibility determination. The immigration judge did not follow that ruling, and the BIA did not even cite or apply that case law when analyzing the case, so it should be reversed for that reason alone. But what if the inconsistency is obvious or apparent? That's a great question, Your Honor, and I think that that almost goes to the second point that I'm about to make, which is this Court's case law in Cuvayaco specifically states that it must be an actual inconsistency and a relevant inconsistency. And I think that what we're seeing in a lot of the more recent case law is that immigration judges are struggling with what is an obvious or apparent inconsistency versus what is just a technical discrepancy in the record. And that's exactly the type of reason that we're asking you to adopt this bright-line rule that's been used in the Second, Fourth, Sixth and Ninth Circuits that would require an immigration judge to confront an asylum seeker with a potential discrepancy and give them a chance to explain themselves before making a final ruling. Can I ask you, Counsel, how that bright-line rule falls within the Real ID Act's text? There have been some circuits that have suggested that because the statute and its recipe, if you will, for credibility findings requires the immigration law judge to look at the totality of the circumstances and the circumstances under which statements were made, that your requested adoption of a bright-line rule would be consistent with that. Because if there is no opportunity to clarify, then what happens is we have an ILJ making a determination that is not reflective of the totality of the circumstances. So I'm a little bit in tension in how that bright-line rule will still be in line with the broad swath of discretion that is given to the ILJ, which we know can make determinations that don't even go to the heart, necessarily, of the applicant's claim. How would we navigate those two things? Thank you for your question, Your Honor. I think you nailed the crux of the issue. And I think the text of the Real ID Act is not only consistent with the test that we're asking you to adopt, but I think the test is required by the text of the Real ID Act. We're certainly not asking this court to take away discretion from immigration judges. And that's obvious that they have a lot of discretion based on the Real ID Act. However, there are limits to that discretion based on the text of the Real ID Act and in this Court's holdings. As to the textual argument that Judge Ruiz just mentioned, it specifically says that the judge, while they can rely on any number of factors, they have to consider the totality of the circumstances and base their determination on all relevant factors. And that language also specifically points out, as Judge Ruiz mentioned, that the judge must consider the totality of the circumstances under which the statements were made. We would submit to Your Honors that the totality of the circumstances, and especially the circumstances in which the statements were made, necessarily envisions that these credible fear interviews are made under less than ideal conditions. We have immigrants coming over, they're under duress, they've usually been traveling for a long time, they're in fear for their lives, they're giving a statement to someone who is translating what they're saying to someone who's taking down notes of it. And in fact, these credible fear interviews uniformly say this is not a direct transcription, it's not a verbatim transcription of what's being said. So it's our opinion and our belief that the Real ID Act is specifically envisioning that these credible fear interviews, they're not going to be 100% accurate and the judge should consider that. And we would submit that for an immigration judge to base their determination based on all relevant factors, as the Real ID Act requires, they have to consider the explanation for why there might be a slight discrepancy in there. And I'm sorry, I was going to ask, you mentioned Kuvico, and I don't know if I'm pronouncing that right, but we also have the Barrios case, and those seem to be two poles that we have to grapple with. I take it that you believe this is more of a Kuvico scenario, where it is perhaps lost in translation. We know there was, whether we were talking about a car or a truck, but in Barrios we have the other side of the argument, which is they did believe the panel in that case very clearly that there was a credibility concern, that that lost in translation issue did get into an adverse realm when they made the determination. So how do we, or where do we find ourselves with these facts? Are we more in the world of Kuvico, or are we, and how do we distinguish it, if you will, from Barrios, which is an issue here for us? Of course. I think this actually harkens back to Judge Wilson's original question about whether there's possibly a plain inconsistency on the record that might not require explanation. Obviously, I'll let my co-counsel handle the real details of the factual issues, but we do, of course, believe that this case is one that falls on the Kuvico side versus the Barrios side. All right. We would submit that this falls on the Kuvico side of things, because what we're looking at here is, especially on the geography issue, I don't think there's an inconsistency at all. He's routinely said that he traveled to Bolivia, came up through Central America, and presented at the southern border. He accidentally omitted one country on that trip along the way. I'm not sure that I can name all the states between here and Minnesota. He says he wasn't given an opportunity to explain. Notice and an opportunity to be heard. And so can you have a due process violation without a statutory obligation to provide a notice and a hearing, notice and an opportunity to be heard? I think that's a tricky question, Your Honor, and we certainly raised that due process argument in our briefing. I think that the more direct way of reaching this bright-line rule and the way of adopting it for this court is just as a natural and necessary extension of the Kuvico holding that requires specific and cogent reasons for making an adverse credibility determination. On the due process issue, obviously, there's a little bit of a middle ground for non-citizens exactly what rules apply, but we would submit that obviously notice and an opportunity to be heard are the key cruxes of due process and that this bright-line rule would be directly in line with that. If it's not required by due process case law, it is certainly entirely consistent and supportive of that, that we give these people who are, you know, at the end of the day, we're talking about people who are trying to escape horrible conditions that have been faced with persecution, possibly torture. We're trying to get to the answer of whether or not they're telling the truth, and I think that's what we can't lose sight of. So, in cases where it's this minor discrepancy between something that was said in the credible fear interview and then a later statement at the asylum hearing, just the simple question of why don't these statements match is going to give us such a better answer. We're going to get the real response from the person seeking asylum. I've noticed in case after case from this circuit, and specifically Judges Pryor and Judge Wilson, I've seen a lot of cases that you've been on for these types of things. I see I'm out of time, if I could quickly wrap up. Just getting that clarification would be incredibly helpful. Instead of wondering what might he have said or is there an explanation for this, you'll get something clearly on the record that says, this is my explanation, and then the immigration judge can either believe them or not, and provide the specific cogent reasons to support that decision. So, with that, we would urge this court to reverse the BIA's decision based on QVAICO and also extend QVAICO as is necessary to adopt the Bright Line Rule in the 2nd, 4th, 6th, and 9th circuits. All right. Thank you, Mr. Carpenter. And Mr. High. Good morning, Your Honors, and may it please the Court. My name is Marty High. I'm here representing Mr. Ignacio Serra, who is a 41-year-old citizen of Cuba who came to the United States seeking asylum from persecution in Cuba. The record is clear that Mr. Serra's asylum claim is well warranted. The government did not put up any other evidence to contradict Mr. Serra's claims of his persecution in the United States in Cuba. This case revolves solely on his credibility determination. It's actually enigmatic that a claimant's oral testimony is sufficient to establish the burden for an asylum applicant. The IJA found Mr. Serra to be non-responsive as a basis for incredibility. The BIA overturned that non-responsiveness finding. The BIA and the IJA both used the supposed non-responsive responses to base the incredibility determination, which we believe is error. Counsel, can I ask you a question about the inconsistencies? BIOS tells us explicitly that they have to be relevant to credibility. Inconsistencies for the sake of inconsistencies are not what we base adverse credibility determinations on. This record indicates an individual who recounted the countries he went through three times. He's off by a country here or there on the last one. It's 589, maybe a little different. We have then a dispute, if you will, about when he passed a kidney stone after being purportedly beaten by secret police in Cuba. How are those two, if they are even inconsistencies, because one could argue whether it's a translation issue like in Cuba Co. with the car versus truck, but let's assume for the sake of argument they are. How does that go, as BIOS tells us, to truthfulness? How does it go to credibility? How is it relevant if he's on or off by a country or when he passed a kidney stone? Well, in short, Your Honor, thank you for that question. In short, we argue that it isn't relevant. But of course, the immigration judge has to look at the totality of the circumstances. The fact that he was off by one country in his 589 application and in his testimony, to us, we argue, is not relevant and really is an inconsistency. At best, it's a perceived inconsistency. And adopting the bright-line rule that Abby is suggesting would have resolved that issue right away. And if he would have been challenged with that perceived inconsistency at the immigration hearing, we contend that the immigration judge would have had a much better idea about his veracity and would have eliminated, would have made his case much more clear for the immigration judge and also eliminated quite a bit of litigation. We wouldn't be here today if Mr. Serra had been asked that simple question. So that's one of the areas. So he actually touched on two of the areas of inconsistency. One is the kidney stone. And in his credible fear interview, he indicated that he passed the kidney stone that day. And first, it's important to note that right in the CFI, the credible fear interview, it states, I quote, the following notes are not a verado transcript of this interview. And we argue that the immigration judge did not consider the totality of circumstances and didn't consider the circumstances under which that statements were made. The Ninth Circuit in Ritz v. Holder found that an immigration judge cannot base an adverse experience on the facts to do so. And so if Mr. Serra was given an opportunity to do so, how would he reconcile the contradiction? Well, I think in the case of the kidney stone issue, anybody that's in that club of having passed a kidney stone knows that you know that you passed a kidney stone, but any other detail is pretty irrelevant. And I think he would say, no, I didn't pass that kidney stone while I was in jail, or yes, I passed that kidney stone several days later. In fact, in the immigration hearing, he said very emphatically, I think he did clear it up, he said very emphatically, no, when he was asked about whether he passed it the day of the meeting or days later, he said, no, this was days after when I released that kidney stone. You see, I suffer from chronic kidney stones, and then he goes on to describe what kidney stones are. So I believe he addressed that without even knowing that there was a perceived inconsistency in the immigration judge's mind. So we argue that there were three errors that were made here. First of all, that there were no inconsistencies in his testimony, either about the countries that he passed through, or the kidney stone. We also argue that the BIA erred by not remanding to the immigration judge when the BIA found that he was responsive. It doesn't make clear to me, or I believe to the Court, how the BIA came up with that ruling, the credibility ruling, if he was in fact nonresponsive. It just doesn't seem to be consistent. So with that, Your Honor, I would like to reserve the balance of our time for rebuttal. All right. Thank you. Mr. High, Mr. Hurley, for the government. May it please the Court, James Hurley for the Attorney General. The petition should be denied because the record does not compel the conclusion that Mr. Serra was credible or presented sufficient corroboration to meet his burden of proof for relief and protection from removal. Furthermore, the agency did not violate due process in finding that Mr. Serra was not credible and did not provide sufficient corroboration. The first point is that the record does not compel the conclusion that Mr. Serra was credible. The agency relied on two inconsistencies that are in the record. The first one was... But it's clear there are two inconsistencies in the record. But it's clear from this record that he was not given an opportunity to reconcile those inconsistencies at all, right? That did not happen in this case, no. And so it seems to me that the agency violated its own case law. It's clear the BIA has already determined that if there are inconsistencies, then you've got to give the applicant an opportunity to reconcile those inconsistencies in every other circuit in the country. The third, the third one is that he was not given an opportunity to reconcile. But that's not in the statute, though. The statute says that you can use any inconsistency whenever it's made. And in this case, it was an obvious inconsistency. There was a big difference between whether or not he passed that kidney stone that day, which he stated explicitly in the credible fear interview, and then... Rather minor to me. I mean, normally when you start passing a kidney stone, it takes about sometimes seven days to pass the stone. That seems like a pretty minor inconsistency. But it's major in this case because there's not a lot of details in this case. Mr. Serra's claim, again, isn't that he was a political activist or he was involved. He was targeted because he wasn't politically active. And he just said he was arrested on three occasions in 2017 because he didn't vote. You know, his story changed slightly with the details of what happened. Well, he passed the kidney stone, didn't he? He passed the kidney stone. And that's one of the few specifics that he provided in this case. And the counsel, the problem is there's nothing in the ILJ or the BIA's opinion, to Judge that are material to his fear of torture in Cuba. We know that the only things that they focus an adverse credible determination on are inconsistencies about the timeline of passing a kidney stone and being off by a country or two. So we really, you're saying there's not a lot of facts. Certainly his story did not raise red flags for the ILJ when it came to abuse. It seems that the things that we're focusing on were hardly material to the credibility of what was happening to him in Cuba. Is it not? Well, you would focus on the totality of the circumstances in this case. And Mr. Serra's claim was that he was arrested on three occasions in 2017. And after the third one in November, he moved to Bolivia where he lived for a year. And he left there because he couldn't find a job and he faced discrimination in Bolivia. So he was there for more than a year. He left in 2018 and then he was traveling with his partner and their son. And he said, we got to Mexico and I stayed in Mexico for an additional seven months before I came. So again, the findings in this case, the IJ and the board just rely on those two inconsistencies to find that he was incredible. But they are present in the record as they're allowed to do. And I would say that this case is much closer to the barriers. He testified with the benefit of an interpreter? He did. Well, if he was given an opportunity to reconcile the inconsistencies, he might be able to establish that there was a misinterpretation at that point. How many countries he passed through on the way to the United States from Bolivia. Yes, that's true. But again, as the statute provides, you can rely on inconsistencies at any point. But you would agree with me that the intent or the purpose of the REAL ID Act is to determine whether an applicant is truthful. It's not, as the Seventh Circuit pointed out in the Sanko case, that you lay in wait for a lapse in memory or a slip of the tongue or a miscommunication. I mean, how is miscounting the number of countries or having a kidney stone timeline off not undercut the purpose of the REAL ID Act? Again, you just focus on the facts of his claim. And again, Mr. Serra's claim was that I was arrested on these three occasions. I wasn't, I didn't hang up that poster that said, down with the Castro's. I was just, I was at home. His story kind of changed as well. Like at the hearing, he said, oh, some lady reported me to the police. So I was arrested for that reason in February of 2017. But then in May 2017, I was just visiting with some friends when there was a, when the police came and said who hung up the sign. But so there's this precious little detach in this case. But you're not trying to argue that now with the record we have that that's what formed the basis of an average credibility determination because the ILJ was very specific. He hung his hat on the kidney stone and the number of countries. I understand your point. There's not a lot of factual development in your view. Certainly he gives a very long recitation about the abuses in prison. But you agree with us that we have to focus on where the credibility determination went the wrong way against the petitioner, right? And it's only on those silos, right? There were two points. That was the ILJ found and that was the poor appeal in its decision. Jay said as far as coming to the United States, he left, he just left out Costa Rica. That's it. It was just a matter of countries. He said that I think it was 10 originally and then he said it was 12. So there was an inconsistency in the record about that. And that's not as strong again as the clear inconsistency about whether or not he passed the kidney stone that day or whether it was a few days later. And again, he said at the hearing, he said I will never forget it was seven days later as opposed to what he said to the asylum officer who said, you know, it happened that day. And also, too, the first interview, the first asylum officer, he did grant him, he did find an appeal, but then it went up to a second asylum officer a few months later who relied on those points. And she specifically mentioned the passing the kidney stone that day. Counsel, to Judge Wilson's point, every, I think every other circuit in this country in some way, shape or form has established the opportunity to explain an inconsistency. Can you explain to me why the 11th Circuit should break with that long line of circuits that have all given, as he stated, a chance to just explain it? And certainly by explaining it, you could probably get a better determination of credibility to make sure it's not something that is merely an inaccuracy, but truly something that would bear on the truthfulness. Why would we be kind of stepping out of sync with all the rest of the circuits in that regard? Two points on that. First, it's just, it's not in the statute. The Relying Act really focused on credibility and it says they can rely on an inconsistency made at any point. And that's what we have in this case. And also, it's, the inconsistency is very, it's going to go to, again, the amount of detail that Mr. Serra presented in his claim. And it's not in the, the Garland v. Ming Dai case, a recent Supreme Court case where the Supreme Court cautioned against these, it was discussing a 9th Circuit presumed credible rule where there are these judge-made rules and the Supreme Court said that we should not allow those judge-made rules to rely on the statute. To the second point, or to another point that I have, Mr. Serra also didn't present any corroboration to the immigration judge. He was asked, he didn't have an attorney during the hearing, but both the immigration judge and the DHL counsel asked him about whether or not he was able to get a statement from his mother or the gentleman who was sitting around the table when he was arrested, when he was supposedly arrested on the May 1st. And he said, well, I didn't ask my mom because you know, I didn't want to give her any more headaches. And then he said that the gentlemen were elderly, so he didn't ask them. He did present some evidence on appeal to the board. He tried to fix, to cure the lack of corroboration that he had. But again, as the board found that it won't consider new evidence in the first place, but then it looked at the evidence and it said, well, these materials aren't signed and they weren't dated and they wouldn't change the result in his case. You would agree with me though that corroboration is not required, meaning the only reason why corroboration even comes into play here is once an adverse credibility determination has been made to try to shore up or overcome it, then we get into a corroboration mode of documentation, other things of that nature to overcome that adverse finding. But the position is not that you have to corroborate your claims, right? I mean, your credibility determination up front does not require documentation in support of it, correct? Correct. But as this court has found too, that it can be fatal when you don't present any corroboration, especially when the immigration judge has a reason to doubt your veracity and his complete inability to present any corroboration to the immigration court. Again, his story kind of evolved as it went along. During the cross-examination, he started talking about how he was drafted when he was younger and that he spent months in jail for not being willing to serve. And then he presented those statements from the other gentleman too. So at every step of this case, he presents more evidence. But again, that just goes to show the totality of the circumstances when it mattered when he was before the immigration judge, he did not present a, he couldn't keep his story, a straight story and he didn't provide any corroboration for his case. If there are no further questions, we ask that this court deny the petition for review. All right. Thank you, counsel. Mr. Carpenter. Your Honor, I think what's really important here is there was a lot of discussion of other facts that were raised, things that were not part of the immigration judge's decision and not part of the BIA's opinion as well. But the crux of the issue is, is that if Mr. Bailão says Sarah's story is true, no one disputes that he's entitled to asylum. The only basis for denying his relief in this case is that the immigration judge found him not to be credible based on only these two inconsistencies. Also, the non-responsiveness, which the BIA found was clearly erroneous. So looking at those three things, it does not seem that those are the types of things that can compel the conclusion that there should be an adverse credibility determination made. Of course, we don't even have to reach that if we determine that he was denied notice and an opportunity to be heard. If we make that determination, that's the end of the matter, right? That's exactly right, Your Honor. I think that's the rule that this Court should adopt. Mr. Hurley's answer to why we shouldn't adopt this rule is that it's not in the REAL ID statute. Would you respond to that argument, please? Absolutely. And it harkens back to the question that Judge Ruiz asked me at the very beginning, which I think it is compelled by the text of the statute. The REAL ID Act specifically states you can rely on almost any factor you want to, but the thing that immigration judges must do is rely on the totality of the circumstances and all relevant factors. I don't know what could be a more relevant factor than an asylum seeker's explanation for why there might be a minor technical discrepancy in the record, particularly given the fact that all these immigration judges and Your Honors know that these credible fear interviews are made under very tough conditions and are not verbatim transfers. We think that a bright line rule is the obvious answer in this case. It is the clear and necessary extension of existing case law and the clear and obvious interpretation of the text of the REAL ID Act. And in addition to that, I lay out in the brief that there would be a lot of additional policy reasons that I think would be benefited greatly as well. First and foremost, we're going to get better results if you have the immigration judges ask someone why there might be a discrepancy and hear their explanation. The BIA and this court applies to all adverse credibility determinations. It can be much more thorough, much more robust because you're going to see here was the actual explanation that was offered. Here's the immigration judges stated reason for not believing that. And then this court can actually determine whether or not there's something there or not. There's too much guesswork in the current standard that's being done and a bright line rule would adequately address that and would vindicate all the policies of the REAL ID Act. and asylum laws writ large. I see that my time's expired. So with that, Your Honors. All right. Thank you, Mr. Carpenter. Mr. High. I'd like to just respond on a few points. The respondent made a great deal of hay in their briefing about lack of corroborative evidence. And of course, as Judge Ruiz pointed out, the corroboration evidence really never came into play here because of the credibility determination. And it is, again, I'm repeating myself, it's axiomatic that an applicant's oral testimony can support an asylum application. We argue that it did here. As far as the notion of whether this duty to question an applicant about discrepancies, I believe is inherent in the totality of the circumstances and also the conditions under which statements are made. It goes to show that an immigration judge would just ask a perceived inconsistencies would have added to the body of information that he or she would have had available to make that credibility determination and to make sure that the asylum applicant is worthy. And we argue that the immigration judge and the BIA failed in that responsibility. A brand new rule is needed, obviously, to clarify that duty under the Real ID Act, and we urge this court to adopt that bright line rule and to remand this case back to the BIA for further consideration. Thank you, Your Honor. Thank you, counsel.